E-FILED
Thursday, 23 March, 2017 11:27:08 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DAVID WILLIAM LINDER, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 1:15-cv-01055-SLD |
| J E KREUGER, Warden, | ) ) ) |
| Respondent. | ) ) |

ORDER

Before the Court is David Linder's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1. For the following reasons, the Court does not at this time rule on Linder's Petition, but requests further briefing from Respondent, as specified herein. Before the Court are also a number of motions Linder filed after the petition was fully briefed: a motion styling itself pursuant to Federal Rule of Appellate Procedure 23(b), but apparently consisting of additional argument, ECF No. 25; motions for subpoenas, ECF Nos. 26, 27, 31; a motion seeking an order to the same effect as a subpoena, ECF No. 32; miscellaneous inquiries of the Clerk, ECF Nos. 28, 29; more argument, ECF No. 30; a motion for bond, ECF No. 33; a motion for an evidentiary hearing, ECF No. 34; a motion for an expedited ruling, ECF No. 35; and still more argument, ECF No. 36. The motions for subpoenas, for order, for bond, and for an evidentiary hearing are DENIED; the others are MOOT. Respondent's motion to substitute attorney, ECF No. 40, is GRANTED.

# BACKGROUND[1]

Linder is jailed at the Pekin Federal Correctional Institution in Pekin, Illinois. He was convicted on February 15, 2005 in the Eastern District of Virginia of several drug-related crimes, and sentenced on May 17, 2005, to life imprisonment for conspiracy to distribute and possession with intent to distribute 5-Methoxy-N, N-Diisopropltryptamine (commonly called "foxy"[2]) resulting in death; 240 months of incarceration on each of eighteen counts of distribution of the drug; 240 months on two counts of money laundering; 48 months for five counts of illegal use of a communications facility, and 120 months for one count of engaging in monetary transactions involving criminally derived property. *See United States v. David William Linder*, Case No. 2:04-CR-00191 (E.D. Va. 2005). The jury found as to the first count that a death resulted from the drugs Linder distributed or caused to be distributed for human consumption. He appealed the convictions to the Fourth Circuit Court of Appeals, which affirmed them all. *United States v. Linder*, 200 F.App'x 186 (4th Cir. 2006). Linder then filed a petition for postconviction relief pursuant to 28 U.S.C. § 2255, which was considered on its merits and denied on December 4, 2008. His appeal of this denial was dismissed by the Fourth Circuit for want of a certificate of appealability on July 29, 2009.

He filed the instant petition for relief under 28 U.S.C. § 2241 on February 2, 2015.

# DISCUSSION

**I.    Legal Standard on a Petition by a Federal Prisoner for Issuance of a Writ of Habeas Corpus**

---

[1] As dictated by the analogous federal habeas corpus rules for proceedings under 28 U.S.C. § 2254 and § 2255, the facts recounted here are taken from Respondent's Response to the Petition, ECF No. 6, unless otherwise noted. *See* 28 U.S.C. § 2248.
[2] Foxy is a hallucinogenic tryptamine in the same category as psilocybin. *Foxy – Fast Facts*, National Drug Intelligence Center, https://www.justice.gov/archive/ndic/pubs6/6440/ (visited on March 15, 2017). According to the Department of Justice, it is often used "at raves, nightclubs, and other venues where the use of club drugs, particularly MDMA (ecstasy), is well-established." *Id.*

Ordinarily, prisoners seeking postconviction relief from a federal district court's judgment must do so via 28 U.S.C. § 2255, "the federal prisoner's substitute for habeas corpus." *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). However, under the "savings clause" of 28 U.S.C. § 2255(e), if a motion pursuant to the statute is "inadequate or ineffective to test the legality of [the petitioner's] detention," he may test it instead by seeking a writ of habeas corpus. *See* 28 U.S.C. § 2241.

To show that section 2255 is inadequate or ineffective, and that issuance of a writ of habeas corpus may be warranted, a petitioner must establish three threshold conditions. First, he must show that his claim "eludes the permission in section 2255 for successive motions; if it does not, if therefore the prisoner is not barred from filing a successive such motion, then his 2255 remedy is not inadequate and he cannot apply for habeas corpus." *In re Davenport*, 147 F.3d 605, 611–12 (7th Cir. 1998). Section 2255 permits successive motions only when they are based upon new information that would establish innocence by clear and convincing evidence, or upon a new and retroactive rule of constitutional law. 28 U.S.C. § 2255(h). The first condition, then, amounts to a requirement that the challenge depend on a new interpretation of statute, rather than of the Constitution. *See Brown*, 696 F.3d at 640. Second, the would-be petitioner must show that the case he seeks to rely on, although decided after his initial 2255 petition, was made retroactive in its effect. *Id.* Third, he must show that the defect of which he complains was "a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding." *Id.* When a sentence is mandatorily increased by operation of rule or statute later determined by the Supreme Court illegal, the error thereby produced is sufficiently grave to warrant a habeas corpus proceeding. *See Narvaez v. United States*, 674 F.3d 621, 623

3

(7th Cir. 2011) (reversing application of the then-mandatory career offender Sentencing Guideline as "constitut[ing] a miscarriage of justice").

Additionally, although petitions for habeas relief are filed in the federal judicial district where a prisoner is incarcerated, *United States v. Prevatte*, 300 F.3d 792, 799 (7th Cir. 2002), a petitioner who challenges his federal conviction via a petition for habeas corpus may not take advantage of a favorable difference in the interpretation of federal law between the circuit where he was sentenced and the circuit where he is now incarcerated. *See Davenport*, 147 F.3d at 612 ("When there is a circuit split, there is no presumption that the law in the circuit that favors the prisoner is correct, and hence there is no basis for supposing him unjustly convicted merely because he happens to have been convicted in the other circuit."). There is also a requirement, for section 2255 to be ineffective, that a defendant either have raised his legal argument on direct appeal and on any initial 2255 petition for postconviction relief, or that he have had "no reasonable opportunity" to do so because the law was settled against him. *Davenport*, 147 F.3d at 610.

## II. Analysis

Linder contends both that the evidence presented at his trial could not sustain a conclusion by the jury that the foxy he distributed or conspired to distribute was a but-for cause of death, and that anyway the jury was not instructed that it had to find the drug was a but-for cause of death. Petition 7–9. He relies on *Burrage v. United States*, 134 S.Ct. 881, 892 (2014), in which the Supreme Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." He argues that *Burrage* applies

4

retroactively, and that therefore, the enhanced sentence imposed upon him for distribution of "foxy" resulting in death was illegal. Mem. Supp. Petition 2, 4–8, ECF No. 2. He also claims that he was not able to present this argument in his original section 2255 petition because *Burrage* was announced years later, and that because *Burrage* turned on statutory interpretation, he cannot bring his new challenge under section 2255, and a writ of habeas corpus is his only available means of relief. *Id.* 9–11. He also seeks a new trial on all the other counts of his original conviction. *Id.* 8–9.

Respondent argues only that *Burrage* has no retroactive effect, and that the Petition should be construed as a request for relief under section 2255 and dismissed for want of jurisdiction. Response 5–9, ECF No. 6. Neither argument is persuasive.

21 U.S.C. § 841(b)(1)(C), under which Linder was sentenced for distribution of foxy with death resulting, provides that the penalty for distribution of a schedule I drug, which foxy is, shall not be more than twenty years, but that "if death or serious bodily injury results from the use" of the substance, the sentence shall not be less than twenty years or more than life. If a defendant has sustained a prior conviction for a felony drug offense and death results, the minimum is life.[3] In *Burrage*, the Supreme Court considered whether a defendant could be convicted under the "death results" provision "when the use of the controlled substance was [merely] a 'contributing cause' of the death . . . ." *Burrage*, 134 S.Ct. at 886. The Court determined that the ordinary meaning of "results from," a phrase section 841 uses without further explanation, "imposes a requirement of but-for causation." *Id.* at 889. This reading compelled the conclusion, quoted above, that, in cases where the drug in question was not an independently sufficient cause of death or injury, it must have been the but-for cause of death or injury for the

---

[3] Neither party indicates whether Linder had previously sustained a felony drug conviction, and so it is not clear whether Linder's life sentence was mandated by statute, or an exercise of the sentencing court's discretion.

sentencing enhancement to apply. *Id.* at 892. Because the defendant in *Burrage* had been convicted by a jury instructed that distributed heroin could have been just a "contributing cause" of death, the Supreme Court reversed and remanded. *Id.*

The first question for this Court is whether Linder's Petition, which squarely challenges his federal sentence, falls into the exception to the general rule that such attacks must be mounted under section 2255.

First, it is plain that *Burrage* rests on a statutory rather than constitutional interpretation. Justice Scalia determined that the "ordinary meaning," *id.* at 887, of the statutory phrase "results from" required but-for causation. *Id.* at 887–88. No constitutional interpretation was required. Thus, Linder would not be permitted to challenge the legality of his sentence under *Burrage* via a successive section 2255 petition because his challenge rests on neither newly discovered evidence, nor upon a "new rule of constitutional law," 28 U.S.C. § 2255(h)(2). Furthermore, he could not have sought this relief in his initial section 2255 motion because it was not then possible "to obtain relief on a basis not yet established by law." *Davenport*, 147 F.3d at 610. Given that section 2255 is therefore "inadequate or ineffective," 28 U.S.C. § 2255(e), to test the legality of Linder's sentence, the Court must consider the other factors enumerated in *In re Davenport* to determine whether Linder's Petition meets the other requirements for filing of a habeas petition by a federal prisoner challenging his sentence.

Second, a misapplication of the law raising a statutory minimum either from zero to twenty years, or from zero to life, would constitute a "miscarriage of justice" sufficient to warrant relief via habeas corpus. *See Narvaez*, 674 F.3d at 623. Citing *Kramer v. Olson*, 347 F.3d 214, 218 (7th Cir. 2003), Respondent argues that because Linder is not raising a claim of actual innocence under the statute in question, and arguing that he deserves to bear no criminal

6

liability for the conduct he was convicted of, he cannot challenge the legality of the mandatory minimum as applied to him. Resp. Petition 7–8. But Respondent misunderstands *Kramer* and the requirement of *Davenport* that a sentence have constituted "a grave enough error to be deemed a miscarriage of justice." *Brown*, 696 F.3d at 640. Kramer, who had been found guilty of engaging in a continuing criminal enterprise ("CCE") and conspiracy to distribute marijuana (or "marihuana," as the statute has it) could not challenge his CCE conviction be petitioning for habeas corpus, because the case he used to challenge it, *Richardson v. United States*, 526 U.S. 813 (1999), "ha[d] no bearing on whether Kramer's conduct violated the CCE statute."[4] *Kramer*, 347 F.3d at 218. Linder is not claiming that distribution of foxy would not have exposed him to criminal liability; rather, that the conduct that he engaged in, while criminal, did not fall within the ambit of section 841's harsher sentence for cases in which death results. It is not required, to seek the writ of habeas corpus, that a petitioner allege his conduct was not illegal; rather, that he allege the application of the law to him constituted a miscarriage of justice, which, the Seventh Circuit has made clear, includes the illegal application of mandatory sentence enhancements. *See Narvaez*, 674 F.3d at 623 ("Because Mr. Narvaez's career offender sentence was improper, his period of incarceration exceeds that permitted by law and constitutes a miscarriage of justice.").

The third question, and the main one upon which the parties disagree (although not the only question for the Court) is whether *Burrage* has a retroactive effect, requiring but-for causation of death for the enhancements of section 841(b)(1)(C) to apply, not only after *Burrage*

---

[4] *Richardson* held that each underlying violation in the continuing series of violations that makes up a criminal enterprise is itself an element of the CCE offense. *Richardson*, 526 U.S. at 817–18, 824. *Richardson* requires jury unanimity as to which offenses counted as the predicate violations on CCE counts, which had not been the rule in the Seventh Circuit. *See Kramer*, 347 F.3d at 216. Thus, even though Kramer would, tried after *Richardson*, have had a right to jury unanimity as to which of the "seven massive boatloads of marijuana (weighing from 14,000 to 152,000 pounds)" he helped move into the United States, his admission to the conduct charged in the indictment would still have exposed him to the same criminal liability. *Id.* at 218.

7

was announced, but before. Only under certain circumstances do new rules announced by the Supreme Court affect cases in which final judgment has already issued. One of these circumstances is when the new rule announced is substantive. *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016). Rules that "narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish" are substantive and thus apply retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (internal citation omitted). "Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.* at 352 (internal quotation marks omitted). While the Supreme Court has not yet decided whether *Burrage* is retroactive, more than one circuit has, including the Seventh. *See Santillana v. Upton*, 846 F.3d 779, 784 (5th Cir. 2017) (holding that *Burrage* applies retroactively to cases on collateral review); *Krieger v. United States*, 842 F.3d 490, 499–500 (7th Cir. 2016) (holding that *Burrage* is a retroactively applicable, substantive decision); *cf. Ragland v. United States*, 784 F.3d 1213, 1214 (8th Cir. 2015) (per curiam) (concluding that *Burrage* challenges are cognizable under § 2255). Although these holdings do not have the same force that the Supreme Court's determination on retroactivity would, "[d]istrict and appellate courts, no less than the Supreme Court, may issue opinions 'holding' that a decision applies retroactively to cases on collateral review. The jurisdictional (and precedential) scope of that holding differs, but it is a holding nonetheless." *Krieger*, 842 F.3d at 499 (quoting *Ashley v. United States*, 266 F.3d 671, 673 (7th Cir. 2001)).

Respondent's argument that *Burrage* ought not to be construed retroactively consists of observing that counsel has not been able to find cases holding that *Burrage* was retroactive and

citing some district court cases holding without argument that it was not. Resp. Petition 6–7; *cf. Krieger*, 842 F.3d at 498 n.1 ("It is also true that a number of district courts have issued opinions holding that *Burrage* does not apply retroactively, although none with any significant analysis."). Respondent has not addressed the Seventh Circuit's holding in *Krieger*; presumably, if he were to do so, it would be in order to withdraw his objection to the Court's construal of *Burrage* as retroactive, at least under precedent in this circuit.

However, it is not only the law in the Seventh Circuit that the Court must consider, but the Fourth. For if the Fourth Circuit had construed *Burrage* as non-retroactive, and thus as providing no succor to prisoners who, like Linder, were sentenced earlier, Linder would not be entitled to relief available only in a circuit which both happened to have a more favorable interpretation of the law and to contain the prison where he was incarcerated (at least in the absence of any word from the Supreme Court on the matter). *Davenport*, 147 F.3d at 612. However, the Court has been unable to discover any Fourth Circuit opinions deeming *Burrage* either retroactive or not, and while the Court has discovered some district court cases in the Fourth Circuit stating without analysis that *Burrage* is not retroactive, and that retroactivity cannot be determined by any court other than the Supreme Court, this Court declines to follow their lead, for the reasons stated above. *See, e.g.*, *United States v. Grady*, No. 5:10CR0002, 2015 WL 4773236, at *4 (W.D. Va. Aug. 12, 2015), appeal dismissed, 627 F. App'x 193 (4th Cir. 2015). Whether the Seventh Circuit's holding in *Krieger* is deemed binding precedent on this Court or merely persuasive, the Court is compelled or chooses to follow it. Linder's Petition qualifies for section 2255's savings clause, and the Court has jurisdiction to entertain it as an application for relief via the writ of habeas corpus.

Finally, the Court rejects Respondent's argument, Resp. Petition 8–9, that Linder's claim "must be brought, if at all, pursuant to 28 U.S.C. § 2255 . . . ." As explained above, Linder's claim as alleged qualifies for section 2255's savings clause, and may be brought as a petition for writ of habeas corpus. The Court reserves ruling at this time on Respondent's additional argument that Linder's request for a new trial on the other 26 counts of his conviction is unsupported by argument.

Linder's *Burrage* claim may have merit, but it is not possible to evaluate it completely at present. While Linder has included a copy of what appears to be the government's proposed jury instruction on "death resulting" from his original criminal trial, Mem. Supp. Petition Attachment 1, it is unclear whether this is the text of the instruction as offered to the jury. Much turns on this jury instruction (and other relevant instructions given to the jury[5]), and upon whether the instructions permitted the jury impermissibly to convict Linder for something other than but-for causation of death. For if the jury instructions erroneously authorized the jury to convict Linder for something other than but-for causation, and there is grave doubt whether the instructions had a substantial and injurious effect on the jury's verdict, reversal will be warranted.[6] *See Sorich v. United States*, 709 F.3d 670, 674 (7th Cir. 2013) (articulating this standard for determining whether reversal is warranted on collateral review of erroneous jury instructions). The rules governing section 2254 and 2255 proceedings provide that "[i]f [an] answer [to a Petition] refers

---

[5] Jury instructions are to be construed with a view to their effect as a whole in informing the jury of the applicable law. *United States v. DiSantis*, 565 F.3d 354, 359 (7th Cir. 2009).

[6] The adequacy or inadequacy of the jury instructions will decide the matter, even though Linder also argues that the evidence presented at trial was insufficient to show but-for causation. For if the jury instructions were erroneous and prejudicial, it does not matter whether sufficient evidence was presented or not. *See Sorich*, 709 F.3d at 674 ("This inquiry does not ask whether the jurors 'were . . . right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision.'" (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946))). Conversely, if the jury instructions were adequate under *Burrage*, the time has passed for Linder to argue that his conviction under lawfully given instructions was unsupported by sufficient evidence. *See Hill v. Werlinger*, 695 F.3d 644, 648–49 (7th Cir. 2012) (explaining that a petitioner's section 2255 remedy can only have been inadequate or ineffective if he was foreclosed from presenting his claim in his original section 2255 petition).

to briefs or transcripts of the prior proceedings that are not available in the court's records, the judge must order the government to furnish them within a reasonable time that will not unduly delay the proceedings." Section 2255 Rule 5(c). Respondent is therefore directed to respond to Linder's claim that he was convicted under a jury instruction that impermissibly directed the jury that but-for causation was not required to be shown. This response should support its assertions with citations to the relevant portions of the trial record, which shall be included with the response. Respondent must do so by April 13, 2017.

### III. Linder's Other Motions

Linder has moved for issuance of subpoenas. ECF Nos. 26, 27, 31, and 32. The Court may order discovery during postconviction review for good cause shown. Section 2254 Rule 6(a), Section 2255 Rule 6(a). The Court denies Linder's motions at this time, in light of its order that Respondent produce relevant material from the trial record in his forthcoming Response. If Linder seeks subpoenas after this filing, the Court will consider his requests at that time. For the same reason, Linder's request for an evidentiary hearing, ECF No. 34, is denied.

Linder requests that he be released on bond during the pendency of these proceedings. ECF No. 33. "[F]ederal district judges in habeas corpus and section 2255 proceedings have inherent power to admit applicants to bail pending the decision of their case . . . ." *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985). The standard for granting release during postconviction proceedings is unclear, but it is clear that it should "be exercised very sparingly." *Id.* Courts have looked to probability of success and exceptional circumstances. *See Jordan v. United States*, No. 15-02294, 2016 U.S. Dist. LEXIS 155342, at *5 (C.D. Ill. Nov. 9, 2016); *Douglas v. United States*, No. 06-CV-2113, 2006 U.S. Dist. LEXIS 89318, 2006 WL 3627071,

at *1 (C.D. Ill. Dec. 11, 2006).  The Court cannot at this time determine Linder's probability of success, and the circumstances do not appear to be exceptional.  The request is denied.

Linder's various motions and memoranda containing additional argument, ECF Nos. 25, 30, and 36, have been reviewed by the Court; insofar as they constitute motions in their own right, they are moot, as are his various requests to the Clerk, ECF Nos. 28, 29, and his request for expedited ruling, ECF No. 35.

## CONCLUSION

Accordingly, Respondent is directed to file another Response, as detailed herein, no later than April 13, 2017.  Some of Linder's motions, ECF Nos. 26, 27, 31, 32, 33, 34 are DENIED, and the others, ECF Nos. 25, 28, 29, 30, 35, and 36 are MOOT.  Respondent's motion to substitute attorney, ECF No. 40, is GRANTED.


Entered this 23rd day of March 2017.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
